UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                                                      Chapter 7
                                                              Case No. 25-31019-KAC

John Thomas Sharkey

              Debtor

## NOTICE OF HEARING AND MOTION
## FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)

TO:     The Debtor and the other entities specified in the applicable Federal Rules of Bankruptcy
Procedure and Local Rule 9013-2:

        1)      Citizens Bank, N.A. ("Movant") hereby moves this Court for the relief requested
below and gives notice of hearing.

        2)      The Court will hold a hearing on this motion on Wednesday, June 11, 2025 at
1:30 o'clock p.m., or as soon thereafter as counsel can be heard, before the Honorable Katherine
A. Constantine, in Courtroom 8 West, 300 South Fourth Street, Minneapolis, MN 55415.

        3)      Any response to this motion must be filed and delivered no later than Wednesday,
June 4, 2025, which is seven (7) days before the time set for the hearing (including Saturdays,
Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY
FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION
WITHOUT A HEARING.

        4)       This court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and
1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The
petition commencing this chapter 7 case was filed on April 8, 2025.  The case is now pending in
this court.

        5)      This motion arises under 11 U.S.C. § 362 and Fed. R. Bankr. P. 4001. This
motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 - 9019-1. Movant requests
relief from the automatic stay with respect to property having an address of 1105 Pioneer Trail,
Bayport, MN 55003 (the "Property") subject to a lien. Movant requests said relief be effective
immediately notwithstanding Fed. R. Bankr. P. 4001(a)(4). The facts and circumstances
supporting this Motion are set forth in the Affidavit in Support of Motion for Relief from
Automatic Stay filed contemporaneously herewith (the "Affidavit").

        6)      The Debtor has executed and delivered or is otherwise obligated with respect to
that certain promissory note in the original principal amount of $331,705.00 (the "Note").  A
copy of the Note is attached to the Affidavit as Exhibit A.  Movant is an entity entitled to enforce
the Note.

7)      Pursuant to that certain Mortgage dated January 5, 2017, and recorded on January 12, 2017, in the Office of the Washington County Recorder as Document No. 4099084, (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property.  A copy of the Mortgage is attached to the Affidavit as Exhibit B.

8)      Debtor executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

9)      All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a copy of which is attached to the Affidavit as Exhibit C.

10)     The legal description of the Property is: Lot 9, Block 2, Inspiration, Washington County, Minnesota.

11)     As of May 7, 2025, the unpaid principal balance of the loan is $287,826.21, together with accrued interest, costs and fees (if any) in the amount of $4,006.97, for a total payoff amount of $291,833.18.

12)     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,225.00 in legal fees and $199.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

13)     The "Current Default Amount" as defined in Local Form 4001-1 is $6,219.88.

14)     The value of the Property as scheduled by the Debtor is $550,000.00. The current tax-assessed value of the Property is $587,200.00.

15)     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed are:

a)  Movant: $291,833.18
b)  DRB 24 LLC: $330,000.00
c)  DRB 24 LLC: $100,000.00
d)  John and Joan Neumiller: $311,130.46
e)  Secretary of Housing and Urban Development: $51,102.00
f)  Secretary of Housing and Urban Development: $40,064.83

MN22299

16)     Cause exists for relief from the automatic stay for the following reasons:

   a)  Movant's interest in the property is not adequately protected; and

   b)  Pursuant to 11 U.S.C. §362(d)(2)(A), Debtor has no equity in the Property;
       and pursuant to §362(d)(2)(B), the Property is not necessary for an effective
       reorganization.

WHEREFORE, Movant, by its undersigned attorney, moves the Court for an order that the
automatic stay provided by 11 U.S.C. § 362(a) be terminated so to permit the Movant to exercise
its remedies under Minnesota state law, and for such other relief as may be just and equitable.

Dated: May 20, 2025                    By:  /s/ Michael V Schleisman
                                       _____
                                       HALLIDAY, WATKINS & MANN, P.C.
                                       Michael V. Schleisman
                                       Attorney for Movant
                                       1333 Northland Drive, Suite 205
                                       Mendota Heights, MN 55120
                                       801-355-2886
                                       michael@hwmlawfirm.com
                                       Attorney ID # 0394992

MN22299

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:

Chapter 7
Case No. 25-31019-KAC

John Thomas Sharkey

Debtor

**AFFIDAVIT IN SUPPORT OF MOTION
FOR RELIEF FROM AUTOMATIC STAY**

I, _Erika Ramirez_, declare under penalty of perjury as follows:

1)      I am a _Bankruptcy Specialist_ of Citizens Bank, N.A. and have personal knowledge of the facts stated herein.

2)      This affidavit is provided in support of the Motion for Relief from Stay filed by Movant in this proceeding (the "Motion").

3)      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $331,705.00 (the "Note"). An accurate copy of the Note is attached hereto as Exhibit A.

4)      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property (as defined in the Motion). An accurate copy of the Mortgage is attached hereto as Exhibit B.

5)      The address of the Property is 1105 Pioneer Trail, Bayport, MN 55003. The legal description of the Property is: Lot 9, Block 2, Inspiration, Washington County, Minnesota.

6)      All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a copy of which is attached to the Affidavit as Exhibit C.

7)      As of May 7, 2025, the unpaid principal balance of the loan is $287,826.21, together with accrued interest, costs and fees (if any) in the amount of $4,006.97, for a total payoff amount of $291,833.18.

8)      The value of the Property as scheduled by the Debtor is $550,000.00. The current tax-assessed value of the Property is $587,200.00. Based upon my assessment, the value of the property is $587,200.00.

MN22299

9)      Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed are:

    a)  Movant: $291,833.18
    b)  DRB 24 LLC: $330,000.00
    c)  DRB 24 LLC: $100,000.00
    d)  John and John Neumiller: $311,130.46
    e)  Secretary of Housing and Urban Development: $51,102.00
    f)  Secretary of Housing and Urban Development: $40,064.83

10)     As of May 7, 2025 the total arrearage/delinquency is $6,219.88.  Attached hereto as Exhibit D is Local Form 4001-1.

Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 15th day of May , 20 25.

Name: Erika Ramirez

Title: Bankruptcy Specialist

THE FOREGOING INSTRUMENT WAS SWORN TO AND SUBSCRIBED before me personally in the State of Virginia , County of Henrico this 15th day of May , 20 25 by Erika Ramirez who,

✓ is personally known to me,

OR

____ produced _____ (type of ID provided) AS IDENTIFICATION TO ME AND WHO DID TAKE AN OATH

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

NOTARY PUBLIC

(seal)

My commission expires:   12-31-2025

MADELINE L TYLER
NOTARY PUBLIC
REG. #7702901
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 12/31/2025

MN22299

# EXHIBIT "A"

# NOTE

MIN: █████████████████          Loan Number: █████████████████

FHA Case No: ████████████████

JANUARY 5, 2017          GOLDEN VALLEY          MINNESOTA
[Date]                    [City]                   [State]

1105 PIONEER TRAIL, BAYPORT, MINNESOTA 55003-1452
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 331,705.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is FRANKLIN AMERICAN MORTGAGE COMPANY, A TENNESSEE CORPORATION .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     3.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on    FEBRUARY 1    , 2017     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on    JANUARY 1, 2047    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 6100 TOWER CIRCLE, SUITE 600, FRANKLIN, TENNESSEE 37067
                                                    or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,512.74 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

---

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  08/14/16                    Page 1 of 4                    DocMagic eForms
                                                                     www.docmagic.com



Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.000    % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  08/14/18                          Page 2 of 4                    DocMagic eForms
                                                                            www.docmagic.com

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

 

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JOHN T SHARKEY            -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower


*[Sign Original Only]*

Loan Originator: HEIDELBERG, RENE, NMLSR ID ███████
Loan Originator Organization: M & M MORTGAGE LLC, NMLSR ID ███████

PAY TO THE ORDER OF:
 WITHOUT RECOURSE

FRANKLIN AMERICAN MORTGAGE COMPANY, A TENNESSEE CORPORATION

BY: _____

ITS:    BERNITA J. HILL, SR. V. P.


MULTISTATE FHA FIXED RATE NOTE
USFHANTE  08/14/16                    Page 4 of 4                    DocMagic eForms
                                                                    www.docmagic.com

# EXHIBIT "B"

Receipt:# 349603

| | |
|---|---|
| MTG | $46.00 |
| CONV | $5.00 |
| MRT | $762.92 |

Return to:
E - SIMPLIFILE
4844 North 300 West
Suite 202

Provo UT 84604

**4099084**

Certified Filed and/or recorded on:

1/12/2017 3:02 PM

**4099084**

**Office of the County Recorder**
**Washington County, Minnesota**
*Jennifer Wagenius, County Recorder*
*Kevin Corbid, Auditor Treasurer*

———————————————————— [Space Above This Line For Recording Data] ——————————

FHA Case No:

Loan Number: ██████████████  **MORTGAGE**

After Recording Return To:
FRANKLIN AMERICAN MORTGAGE COMPANY
6100 TOWER CIRCLE, SUITE 600
FRANKLIN, TENNESSEE 37067

**MIN:** ████████████████       **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated      JANUARY 5, 2017      , together with all Riders to this document.
**(B)** **"Borrower"** is JOHN   SHARKEY, A SINGLE PERSON

Borrower is the mortgagor under this Security Instrument.
**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** **"Lender"** is FRANKLIN AMERICAN MORTGAGE COMPANY

Lender is a TENNESSEE CORPORATION                                   organized
and existing under the laws of THE STATE OF TENNESSEE
Lender's address is 5221 NORTH O CONNOR BLVD SUITE 900, IRVING, TEXAS
75039
**(E)** **"Note"** means the promissory note signed by Borrower and dated      JANUARY 5, 2017

---

The Note states that Borrower owes Lender THREE HUNDRED THIRTY-ONE THOUSAND SEVEN HUNDRED FIVE AND 00/100 Dollars (U.S. $ 331,705.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2047 .

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☒ Planned Unit Development Rider
☐ Condominium Rider ☐ Other(s) [specify]

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA 09/14/15 Page 2 of 13 DocMagic eForms
www.docmagic.com

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
COUNTY                                          of WASHINGTON                                          :
      [Type of Recording Jurisdiction]                                          [Name of Recording Jurisdiction]
LOT 9, BLOCK 2, INSPIRATION, WASHINGTON COUNTY, MINNESOTA
A.P.N.: ████████████

which currently has the address of 1105 PIONEER TRAIL
                                    [Street]

        BAYPORT          , Minnesota       55003-1452          ("Property Address"):
        [City]                               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA   09/14/15                    Page 3 of 13                         *DocMagic eForms*
                                                                *www.docmagic.com*

check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds**. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

3.   **Funds for Escrow Items**. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA  09/14/15                              Page 4 of 13                          DocMagic *eFarms*
www.docmagic.com

Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, *and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are* Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood *zone determination and certification services and subsequent charges each time remappings or similar changes occur* which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA  09/14/15                     Page 5 of 13                     *DocMagic* **eForms**
www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA  09/14/15                    Page 6 of 13                    DocMagic *eFormans*
www.docmagic.com

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA   09/14/15                              Page 7 of 13                              DocMagic *eForms*
www.docmagic.com

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA   09/14/15                     Page 8 of 13                     DocMagic *eForms*
                                                                          www.docmagic.com

and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.



However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA  09/14/15                    Page 11 of 13                    DocMagic *eForms*
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
JOHN    SHARKEY          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

Witness:                                   Witness:

_____                  _____

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of MINNESOTA

County of Hennepin

This instrument was acknowledged before me on January 5, 2017
(date)

by JOHN   SHARKEY    A Single Person

_____

(name(s) of person(s))

LINDSEY M DANNEN
Notary Public
State of Minnesota
My Commission Expires
January 31, 2022

Signature of notarial officer

(Seal, if any)

Title and Rank

My commission expires: 1/31/22

This instrument was drafted by:   FRANKLIN AMERICAN MORTGAGE COMPANY
                                  6100 TOWER CIRCLE, SUITE 600
                                  FRANKLIN, TN 37067

Tax statements for the real property described in this instrument should be sent to:
FRANKLIN AMERICAN MORTGAGE COMPANY
6100 TOWER CIRCLE SUITE 600
FRANKLIN, TENNESSEE 37067

Loan Originator: HEIDELBERG, RENE, NMLSR ID ███████
Loan Originator Organization: M & M MORTGAGE LLC, NMLSR ID ███████

MINNESOTA FHA MORTGAGE - MERS
MNMTGZ2.FHA  09/14/15                    Page 13 of 13                    DocMagic €Forms
                                                                         www.docmagic.com

# PLANNED UNIT DEVELOPMENT RIDER

Loan Number: ██████████

FHA Case No.
██████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made this            5th            day of
JANUARY, 2017                  , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to   FRANKLIN
AMERICAN MORTGAGE COMPANY, A TENNESSEE CORPORATION
"Lender" of the same date and covering the Property described in the Security Instrument and located at:

1105 PIONEER TRAIL, BAYPORT, MINNESOTA 55003-1452
*[Property Address]*

The Property Address is a part of a planned unit development ("PUD') known as:

BAYPORT
*[Name of Planned Unit Development]*

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.   So long as the Owners Association (or equivalent entity holding title to common areas and facilities),
     acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master"
     or "blanket" policy *insuring the property located in the* PUD, including all improvements now existing
     or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides
     insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including
     fire and other hazards included within the term "extended coverage," and loss by flood, to the extent
     required by the Secretary, then:

     (i)   Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment
           to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
           and
     (ii)  Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance
           coverage on the Property is deemed satisfied to the extent that the required coverage is provided
           by the Owners Association policy.

     Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of
     any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of
     restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any
     proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the
     sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

MULTISTATE PUD RIDER
USFHAP.RDR  09/01/14                          Page 1 of 2                    *DocMagic ᴇⱠᴼʳᵐˢ*
                                                                            *www.docmagic.com*

B.     Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.     If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
JOHN T SHARKEY            -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


MULTISTATE PUD RIDER
USFHAP.RDR 09/01/14               Page 2 of 2              DocMagic eForms
                                                             www.docmagic.com

# EXHIBIT "C"

**Receipt:#** 607397

AM                        $46.00

**Return to:**
E - SIMPLIFILE
4844 North 300 West
Suite 202

Provo UT 84604

**4388806**

Certified Filed and/or recorded on:

10/14/2022 3:31 PM

**4388806**

**Office of the County Recorder**
**Washington County, Minnesota**
*Jennifer Wagenius, County Recorder*

# ASSIGNMENT OF MORTGAGE

PREPARED BY: FIRST AMERICAN MORTGAGE SOLUTIONS
WHEN RECORDED MAIL TO: FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH: 208-528-9895

**MINNESOTA**

COUNTY OF **WASHINGTON (A)**
LOAN NO.: ███████

KNOW ALL MEN BY THESE PRESENTS THAT the current beneficiary **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR FRANKLIN AMERICAN MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, bargain, assign, transfer, and set over unto **CITIZENS BANK, N.A.** located at **10561 TELEGRAPH ROAD, GLEN ALLEN, VA 23059**, Assignee, its successors and assigns, all Assignor's right, title, and interest in and to that certain indenture of Mortgage dated **JANUARY 05, 2017**, executed by **JOHN SHARKEY, A SINGLE PERSON** as Grantor/Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR FRANKLIN AMERICAN MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS**, the Original Grantee/Mortgagee, securing payment for the sum of **$331,705.00** and recorded on **JANUARY 12, 2017** as Document No. **4099084** in the Office of the Recorder of **WASHINGTON (A)** County, State of **MINNESOTA**.

**AS DESCRIBED IN SAID MORTGAGE**

TO HAVE AND TO HOLD the same unto the said Assignee, its successors and assigns, forever, subject only to the provisions in the said indenture of Mortgage contained. TOGETHER with all rights accrued or to accrue under said Mortgage.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **OCTOBER 14, 2022**.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR FRANKLIN AMERICAN MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS**

**DONALD E. OLSON, VICE PRESIDENT**          **REBECCA HIGLEY, VICE PRESIDENT**

STATE OF **IDAHO**                    COUNTY OF **BONNEVILLE**          ) ss.

On **OCTOBER 14, 2022**, before me, **ADDISON RICE**, personally appeared **DONALD E. OLSON** and **REBECCA HIGLEY** known to me to be the **VICE PRESIDENT** and **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR FRANKLIN AMERICAN MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the individuals who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**ADDISON RICE (COMMISSION EXP. 06/15/2024)**
NOTARY PUBLIC

> ADDISON RICE
> Notary Public - State of Idaho
> Commission Number 20181118
> My Commission Expires Jun 15, 2024

MIN: ███████

MERS PHONE: 1-888-679-6377

# EXHIBIT "D"

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: John Thomas Sharkey                                                    Case No. 25-31019 KAC
Debtor.

**LOAN HISTORY**

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date Payment Due | Date Payment Received | Date to which payment applied (mo/yr) | Amount rec'd from Debtor(s) | Monthly Amount Due: Principal + Interest | Monthly Amount Due: Escrow | Amount Due: Late Fees | Amount Due: Other Charges* | Description of Charge |
|---|---|---|---|---|---|---|---|---|
| | | | | CHARGES | | | | |
| 4/1/2025 | | | | $1,841.14 | $1,268.80 | | | |
| 5/1/2025 | | | | $1,841.14 | $1,268.80 | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTALS | | | $0.00 (a) | $3,682.28 (b) | $2,537.60 (c) | $0.00 (d) | $0.00 (e) | |

*Any "Other Charge" must be described, itemized by amount and allowed under Note and/or mortgage (ie inspection fee, appraisal fee, insurance, taxes, etc.)

| | |
|---|---|
| Default Amount Claimed in the Motion | $6,219.88 |
| Attorneys' fees and filing fee for the motion, if allowed under Note and/or Mortgage and sought by | $1,424.00 |
| Escrow Balance (amount held for payment of taxes, insurance, etc.) | $0.00 |
| Suspense Account Balance (amount of un-applied payments) | $0.00 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                                          Chapter 7
                                                     Case No. 25-31019-KAC

John Thomas Sharkey

                    Debtor

**MEMORANDUM IN SUPPORT OF MOTION
FOR RELIEF FROM AUTOMATIC STAY**

Citizens Bank, N.A. (**Movant**) submits this memorandum of law in support of its motion

for relief from the stays in the above-entitled matter.

## FACTS

Movant holds a valid, duly perfected mortgage on Property owned by Debtor.  Mortgage

payments are delinquent with respect to the months of April 1, 2025 to May 1, 2025 in the

amount of $6,219.88.

The value of the Property as scheduled by the Debtor is $550,000.00.  The current tax-

assessed value of the Property is $587,200.00. The total mortgage debt of Movant's Mortgage is

$291,833.18.  That upon information and belief, the following holds junior liens on the subject

property: DRB 24 LLC in the amount of $330,000.00 and $100,000.00, John and John Neumiller

in the amount of $311,130.46, and Secretary of Housing and Urban Development in the amount

of $51,102.00 and $40,064.83.

## ARGUMENT

Under §362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted

upon request of a creditor "for cause, including the lack of adequate protection of an interest in

property of such [creditor]."  11 U.S.C. §362(d)(1).

Debtor has otherwise failed to provide Movant with adequate protection of its interest in

MN22299

the Property. Such circumstances constitute cause, within the meaning of §362(d)(1), justifying relief from the stay.  In Re Tainan, 48 B.R. 250 (Bkrtcy E.D. Pa. 1985);  In Re Quinlan, 12 B.R. 516 (Bkrtcy. W.D. Wis. 1981).

Under §362(d)(2), where Debtor does not have any equity in the property and the property is not necessary for an effective reorganization, the automatic stay should be lifted. Where there exists no equity in the property that is the subject of a motion for relief from stay, it is incumbent upon a debtor to make a showing that the property is necessary to an effective reorganization in order to successfully defend against the motion. *In re Embassy Enterprises of St. Cloud*, 125 B.R. 552, 554 (Bankr. D. Minn. 1991).  *Martens, supra*, at 398.

## CONCLUSION

Accordingly, Movant is entitled to an order terminating the stays of 11 U.S.C. §362(a) and authorizing it to foreclose its mortgage on the Property.

Dated: May 20, 2025                    By:  /s/ Michael V Schleisman

HALLIDAY, WATKINS & MANN, P.C.
Michael V. Schleisman
Attorney for Movant
1333 Northland Drive, Suite 205
Mendota Heights, MN 55120
801-355-2886
michael@hwmlawfirm.com
Attorney ID # 0394992

MN22299

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                                                    Chapter 7
                                                              Case No. 25-31019-KAC

John Thomas Sharkey

                    Debtor(s)

**UNSWORN DECLARATION FOR PROOF OF SERVICE**

The undersigned, employed by HALLIDAY, WATKINS & MANN, P.C., attorneys licensed to practice in this Court, declare that on May 21, 2025 I served the annexed: a) Notice of Hearing and Motion for Relief from Stay, b) Affidavit in Support of Motion for Relief from Stay, c) Memorandum of Law, and d) proposed Order for Relief to each person referenced below, a copy thereof by enclosing the same in an envelope with first class postage prepaid, addressed to each of them at their last known address as follows:

John Thomas Sharkey
1105 Pioneer Trail
Bayport, MN 55003

And delivered by U.S. Certified mail and deposited in the post office at St. Paul, Minnesota addressed to each of them as follows:

DRB 24 LLC
Attn Managing Agent David R Busch
1020 Davern St
Saint Paul, MN 55116

John and Joan Neumiller
CO CREIG ANDREASEN, ESQ / AVISEN LEGAL PA
901 MARQUETTE AVE S STE 1675
Minneapolis, MN 55402

Attorney General of the United States, U.S. Dept. of Justice
U.S. Department of Housing and Urban Development
950 Pennsylvania Ave. N.W.
Washington, D.C. 20530

United States Attorney – District of Minnesota
U.S. Department of Housing and Urban Development
Attn:  Civil Process Clerk
300 S 4th Street, Suite 600

MN22299

Minneapolis, MN 55415

U.S. Department of Housing and Urban Development
451 Seventh Street S.W.
Washington, DC 20410

U.S. Department of Housing and Urban Development
77 West Jackson Boulevard
Chicago, IL 60604

And delivered by e-mail notification under CM/ECF on the date e-filed with the Court to each of
them as follows:

Nauni Jo Manty, Chapter 7 Trustee
US Trustee
John D. Lamey, III, Debtor Attorney

and this notice constitutes service or notice pursuant to Local Rule 9006-1(a).

    And I declare, under penalty of perjury, that the foregoing is true and correct.


Dated: May 21, 2025                          Signed: /s/ Avery Merrill


MN22299

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                                                    Chapter 7
                                                          Case No. 25-31019-KAC

John Thomas Sharkey

                      Debtor

**ORDER GRANTING RELIEF FROM STAY**

This case is before the court on the motion of Citizens Bank for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED:**

1)      The motion for relief from stay is granted as follows.

2)      The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

        Lot 9, Block 2, Inspiration, Washington County, Minnesota.

3)      Notwithstanding Fed. R. Bankr. P. 4001(a)(4), this order is effective immediately.

Dated:                                    _____

                                          United States Bankruptcy Judge

MN22299