# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

BKY No. 25-31019

In re:

Chapter 7

John Sharkey,

    Debtor.

---

ADV No. _____

John Neumiller,

    Plaintiff,

**ADVERSARY COMPLAINT**

vs.

John Sharkey,

    Defendant.

---

Plaintiff John Neumiller ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Defendant John Sharkey ("Defendant" or "Sharkey"), states and alleges as follows:

## JURISDICTION AND VENUE

1. This adversary proceeding arises under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) and Federal Rule of Bankruptcy Procedure 7001.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

5. Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court.

## PARTIES

6. Plaintiff John Neumiller is an individual residing in the State of Minnesota.

7. Defendant John Sharkey is the debtor in the above-captioned bankruptcy case and was, at all relevant times, operating as a homebuilder under the name Sharkey Design Build LLC.

8. At all relevant times, John Sharkey personally solicited, negotiated, and executed the Contract, accepted payments directly, and executed the Quit Claim Deed. Plaintiff's dealings were exclusively with Sharkey in his individual capacity. The acts and omissions giving rise to this adversary proceeding were committed by him personally and not merely in a representative capacity. The Contract, the Quit Claim Deed, and other relevant transactional documents are described in greater detail below.

## FACTUAL ALLEGATIONS

9. On or about November 9, 2020, Plaintiff entered into a written New Home Construction Agreement (the "Contract") with Defendant d/b/a Sharkey Design Build LLC for the construction of a new home on Tract C of Registered Land Survey No. 641, located at 300 Ryan Avenue, St. Paul, Minnesota ("Tract C").

10. Prior to executing the Contract, Defendant had encumbered Tracts A, B, and C with a mortgage in favor of Vermillion State Bank, recorded on August 19, 2020, in the Torrens property system under Document No. T02593898.

11. Minnesota law imposes a statutory duty on sellers of residential real property under Minn. Stat. § 513.55 to disclose, in good faith, all material facts known to the seller that could adversely and significantly affect an ordinary buyer's use and enjoyment of the property. This includes undisclosed liens or encumbrances that materially impair legal ownership or intended use. Defendant, having knowledge of the mortgage lien encumbering Tract C, had a duty under Minn. Stat. § 513.55 to disclose this material fact to Plaintiff prior to conveying the property.

12. Defendant failed to disclose the existence of this mortgage lien to Plaintiff at any point during the course of contracting, construction, or conveyance.

13. In late 2022 and early 2023, after the construction of the home was complete, Plaintiff began inquiring about transferring the land into his and his wife's names, including via an email dated February 6, 2023.

14. Over the ensuing months, Plaintiff repeatedly followed up with Sharkey regarding the promised transfer of Tract C. These communications included emails, calls, and in-person requests. At no time did Sharkey acknowledge any encumbrance or reason for delay.

15. At no time during any of these communications did Sharkey disclose that Tract C, including the newly constructed home in which Plaintiff and his family had been living in since February 10, 2022, remained encumbered by a mortgage, or that he was unable to transfer the land without the consent of Vermillion State Bank.

16. Despite persistent follow-up by Plaintiff, Sharkey delayed transferring title to Tract C for over a year after the family had moved in. This delay occurred notwithstanding Plaintiff's clear and repeated requests for timely transfer. The delay coincided with the execution of a

Partial Release of Mortgage recorded on November 23, 2022 (Document No. T02661562), which released only Tract B from the 2020 mortgage.

17. This selective release—removing the lien from Tract B but not Tract C—demonstrates that Sharkey was actively working with the Bank and was fully aware of the continuing encumbrance on Tract C.

18. On or about February 14, 2023, Defendant caused Sharkey Design Build LLC to execute a Quit Claim Deed conveying Tract C to Plaintiff. The deed was recorded as Document No. T02685841.

19. Plaintiff had wired funds to Defendant in reliance on receiving full and unencumbered title to Tract C. The payments included both construction-related disbursements and consideration for the transfer of the land.

20. Plaintiff reasonably and justifiably relied on Defendant's silence regarding the mortgage lien, Defendant's conduct in accepting payment, and the execution of the Quit Claim Deed, believing the property was free of undisclosed liens.

21. Plaintiff only learned of the existing mortgage lien after the transfer, when counsel for Vermillion State Bank contacted him and provided documentation showing that Tract C remained subject to the 2020 mortgage.

22. Sharkey knew or should have known that failing to disclose the mortgage would induce Plaintiff to pay and accept title under false pretenses.

23. Sharkey's concealment of the mortgage lien and failure to resolve it prior to transfer was an intentional omission made for the purpose of obtaining money and transferring the property without discharging the lien.

24. Sharkey benefitted from the funds paid and avoided satisfying the mortgage obligation associated with Tract C.

25. As a result of Sharkey's nondisclosure, Plaintiff became entangled in a foreclosure proceeding initiated by Vermillion State Bank. Although the foreclosure was ultimately canceled, it created legal uncertainty, incurred attorney fees, and impaired Plaintiff's ability to secure financing or sell the property.

26. In an effort to protect his interest and mitigate further damage, Plaintiff negotiated with Vermillion State Bank to resolve the outstanding mortgage encumbering Tract C.

27. As part of this transaction, Plaintiff paid $350,304.70 to Vermillion State Bank in exchange for an assignment of the 2020 Mortgage. The assignment transferred to Plaintiff all rights previously held by the Bank, including the mortgage lien against Sharkey's personal residence located in Bayport, Minnesota.

28. The assignment was recorded on or about January 23, 2024, in Washington County.

29. Following this assignment, Vermillion State Bank executed and recorded a Release of Mortgage as to Tract C, thereby clearing title to Plaintiff's property and resolving the encumbrance that Sharkey had failed to disclose or satisfy.

30. Public reports confirm that Defendant Sharkey has faced at least 18 lawsuits and multiple homeowner complaints for similar conduct involving uncompleted homes, misrepresentations, and financial impropriety.

31. The Minnesota Department of Labor and Industry revoked Defendant's contractor license based on these complaints, citing misrepresentations, failure to communicate, and financial mismanagement. These facts further corroborate Plaintiff's allegations of intentional and injurious conduct.

## COUNT I
## ACTUAL FRAUD AND FRAUDULENT/INTENTIONAL MISREPRESENTATIONS – 11 U.S.C. § 523(a)(2)(A)

32. Plaintiff realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

33. Sharkey made false representations, including by implication and omission, regarding the title status of Tract C.

34. Specifically, Sharkey failed to disclose the 2020 mortgage lien, despite knowing that Plaintiff was paying funds in reliance on receiving clean title.

35. Sharkey knew these representations were false or acted with reckless disregard for the truth.

36. Sharkey intended for Plaintiff to rely on his silence and conduct in order to secure payment.

37. Plaintiff justifiably relied on these representations and omissions in wiring funds and accepting title.

38. Plaintiff sustained damages as a direct and proximate result, including paying for encumbered property and facing impaired title.

39. The debt arising from Sharkey's conduct is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## COUNT II
## WILLFUL AND MALICIOUS INJURY – 11 U.S.C. § 523(a)(6)

40. Plaintiff realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

Document     Page 5 of 5

41. Sharkey's actions in accepting funds, transferring encumbered property, and concealing the mortgage lien were deliberate and wrongful.

42. Sharkey knew or was substantially certain that Plaintiff would be harmed by his conduct.

43. Sharkey's actions caused willful and malicious injury to Plaintiff's property rights.

44. The resulting debt is nondischargeable under 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiff respectfully requests the following relief:

1. A judgment declaring that the debt owed to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and/or § 523(a)(6);

2. An award of compensatory damages in an amount of $350,304.70, or such other amount as may be proven at trial;

3. Costs and reasonable attorneys' fees to the extent permitted by law; and

4. Such other and further relief as the Court deems just and equitable.

DAVE BURNS LAW OFFICE, LLC

Dated: July 11, 2025

/e/ David M. Burns
David M. Burns, #337869
1025 Grain Exchange South
400 South Fourth Street
Minneapolis, MN 55415
Phone: 612-677-8351
Fax: 866-223-3806
Email: dave@daveburnslaw.com

*Attorney for Plaintiff*

**VERIFICATION**

I, John Neumiller, certify that under penalty of perjury that the factual information contained in the referenced Complaint is true and correct to the best of my knowledge, information and belief.

Dated: July 11, 2025

John Neumiller (Jul 11, 2025 18:08 CDT)
John Neumiller